UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.S.,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 20-cv-06905-JCS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 28, 35 |

## I.  INTRODUCTION

On August 9, 2017, Plaintiff R.S.[1] applied for supplemental security income ("SSI") under Title XVI of the Social Security Act alleging disability beginning January 7, 2016 based on paranoid schizophrenia, bipolar disorder, depression, insomnia, right arm gunshot wound, difficulty breathing, lack of equilibrium, an injured neck from a bicycle accident, and attention deficit hyperactivity disorder ("ADHD"). *See* Administrative Record ("AR") 213.  The claim was denied initially and upon reconsideration, and Kevin Gill, an administrative law judge ("ALJ"), held a hearing on August 6, 2019.  Although R.S. did not appear at the hearing, his attorney appeared his behalf.  On November 13, 2019, the ALJ denied R.S.'s application and on August 3, 2020, the Appeals Council denied Plaintiff's appeal of the ALJ's decision, making it the final decision of the Commissioner of the Social Security Administration ("Commissioner").  After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. §

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only his initials.

405(g). Presently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Judgment.[2]

## II. BACKGROUND

### A. Factual Background

R.S. is a 33-year-old man who lives in Oakland, California. AR 209, 212. He completed ninth grade. AR 214. Although the medical records in this case are limited, reports by R.S. to treatment providers suggest a history of trauma dating back to his childhood, including being shot as a toddler while in a stroller, AR 554; being punched in the face in 2005 while at Juvenile Hall, AR 603; and being subjected to physical abuse. *Id.* He reports that he began experiencing auditory hallucinations "(e.g. comments on his behavior) that are disruptive/ confusing" when he was fifteen. AR 591.

R.S. reported to treatment providers that in 2011 he was hospitalized for two to three days on a 5150 hold at John George Psychiatric Hospital because he thought a girl was talking about him at McDonalds and spit on her.[3] AR 521, 530. He reported in 2018 that he had been diagnosed with "psychopathic schizophrenia" and bipolar disorder 13 or 14 years earlier. AR 546. He also reported a past diagnosis of depression. AR 334.

Medical records reflect that as an adult, R.S. has been the victim of gunshot injuries at least twice. AR 504 (gunshot wound to shoulder sustained on 3/5/2013), AR 297 (gunshot wound to buttock and thigh sustained in 2015). In 2018, he was ejected from a dirt bike while riding without a helmet and sustained facial fractures. AR 382. A CT revealed a "displaced anterior table fracture with posterior table involvement and evidence of pneumocephalus and extra-axial hemorrhage . . . due to frontal sinus fractures." AR 381. Treating physician Dr. Hern White diagnosed a "[b]rain disorder, other specified," ICD code G93.89.[4] AR 397. Because there was

---

[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).
[3] A request for medical records was sent by the Social Security Administration to John George Psychiatric Hospital seeking records for R.S. from August 2016 on. AR 319. No records for those dates were found. AR 323.
[4] The Court takes judicial notice that at the time of this diagnosis, ICD Code 93.89 referred to

2

no active bleed it was determined that surgery was not required. AR 382. R.S. was treated with Tylenol and antibiotics. AR 382-383.

Dr. Rinata Wagle, who treated R.S. while he was incarcerated at Santa Rita Jail, notes that R.S. "has a history of ADHD diagnosis" and "used to be treated at Guidance clinic" and that he also "has a history of contacts with [Adult Forensic Behavioral Health] and Sausal Creek." AR 603. Dr. Wagle states that other diagnoses from the past include "[a]djustment disorder" and "possible thought disorder." *Id.* She lists past psychotropic medications taken by R.S. "as per records" to be Wellbutrin, Concerta and Zyprexa. AR 602.

The administrative record contains records of mental health treatment R.S. received from Alameda Behavioral Services while incarcerated, covering periods of time when R.S. was in custody between 2013 and 2018. AR 518-620. The jail records reflect that often R.S.'s mental status examinations were normal. *See, e.g.,* AR 329-33, 341-46, 522-23, 532-33. He consistently complained of auditory hallucinations, however. *See, e.g.* AR 331, 342, 538, 589, 591, 600, 603. In a March 23, 2018 treatment note, Dr. Rinata Wagle diagnosed R.S. with "unspecified schizophrenia spectrum disorder and other psychotic disorder" as well as "THC, amphetamine, ETOH use disorder." AR 603; *see also* AR 610 (listing primary diagnosis in 3/20/2018 therapist treatment notes as "unspecified schizophrenia spectrum" (DSM-5 descriptor), "unspecified psychosis not due to a substance or known physiological condition" (ICD-10 descriptor) and listing signs and symptoms supporting diagnosis as "reports [audio hallucinations], [command audio hallucinations] mostly conversations"). In the same treatment note she observed that R.S. had reported using THC, alcohol and amphetamines prior to coming into custody, which "could be responsible for his insomnia and symptoms of [audio hallucinations]." AR 603. Approximately one month later, on April 19, 2018, Dr. Wagle again listed R.S.'s diagnoses as schizophrenia spectrum and other psychotic disorder and THC, amphetamine and alcohol use disorder, but she noted that R.S. did "not appear to have a formal thought disorder at this time." AR 606.

R.S. also sometimes complained of insomnia and depression to his treatment providers.

---

"other specified disorders of brain[,]" including pneumocephalus.

3

*See, e.g.,* AR 586, 603, 614.

The treatment records reflect that on several occasions treatment providers discussed with R.S. medications to address his auditory hallucinations. For example, on July 30, 2013 R.S. talked to Dr. Singh about Zyprexa, which he had been prescribed previously by Sausal Creek; although R.S. reported that he had found it "helpful" he told Dr. Singh that he stopped taking it "because of concern of long term impact of such meds." AR 588; *see also* AR 586 (7/23/2013 therapist note indicating R.S. stopped taking medications prescribed by Sausal Creek because they "knocked him out."). Dr. Singh's July 30, 2013 treatment notes reflect that R.S. was "alert[,]" exhibited "no unusual behaviors or movements" and "no psychomotor retardation or agitation[,]" was "cooperative[,]" that his mood was "euthymic" and his thought process was "linear mostly logical." AR 589. He noted, though, that R.S. was experiencing auditory hallucinations and diagnosed him with "psychosis NOS (r/o substance abuse r/o [Schizophrenia Chronic Paranoid Type])" as well as marijuana and alcohol abuse. AR 589. At that appointment with Dr. Singh, R.S. agreed to another trial of Zyprexa. *Id.* A month later, R.S. expressed "ambivalence" about the medication to Dr. Singh, which he reported caused grogginess; he agreed to increase the dose but also admitted he had not taken the medication for the past several days. AR 591-592.

In March 2018, R.S. discussed the possibility of going back on Zyprexa with Dr. Wagle because he was having issues with insomnia and hearing voices, but he told her he did not want to take Zyprexa because he was concerned it would cause issues with diabetes. AR 603. He agreed to try an older anti-psychotic medication called thorazine, AR 603, but after taking it a couple of times he stopped because he did not like it. AR 605. Dr. Wagle noted that R.S. "agreed with getting monitored without medications" and that R.S. had gotten a job as a "pod monitor" and "appear[ed] to be doing well working so far." AR 605-606.

In September 2018, R.S. continued to complain of insomnia and auditory hallucinations but declined Dr. Wagle's offer to prescribe Zyprexa to address these problems. AR 614-615. He agreed to try a "small dose" of buspar (Wellbutrin) for his insomnia, but didn't take this medication, leading Dr. Wagle to discontinue the prescription. AR 568, 614-615.

R.S. also sometimes did not show up at his mental health appointments. For example, in

4

on February 27, 2018, R.S. did not show up for an appointment. AR 596. A few days later it was recommended that he be placed in health unit housing based on a deputy's observation that R.S. wasn't bathing, "present [ed] as paranoid" and was having auditory hallucinations "on/off." AR 595-596. It was noted that R.S. wasn't "programming well" and wasn't a "good fit" in mainline housing. AR 595-596. On March 20, 2018, R.S. refused to come to his appointment and was seen "cellside." AR 598-600. He was cooperative but remained in his bunk and was observed to be "mildly depressed." *Id.*

On April 26, 2018, R.S. refused to come to an appointment with a therapist, William Zappas, who instead came to the mental health unit where R.S. was housed and conducted the appointment there; the therapist's notes state that R.S. was seen "standing by the T.V." AR 607. The therapist noted, "questionable report of psychotic [symptoms], does not appear to present with any positive or negative [symptoms] of schizophrenia at present." AR 607.

On September 19, 2018, R.S. (who had in the interim been released and arrested again on September 14, 2018) again refused to come to an appointment with Zappas, who saw R.S. in his cell. AR 610-612. R.S. remained reclined in his bunk. AR 611. Zappas observed that R.S. showed no "overt psychotic symptoms" and included a notation with the diagnosis of unspecified schizophrenia spectrum stating "possibly in remission." AR 611-612.

R.S. also did not show up at two scheduled appointments for psychiatric consultative examinations in connection with his disability application, one on November 14, 2018 and another scheduled after the hearing before the ALJ, on September 12, 2019. AR 275, 279, 622. Nor did he show up for a medical examination scheduled for June 19, 2018. AR 362. In addition, R.S. did not complete an adult function report. AR 223-231. Instead, his counsel completed part of the form, explaining that R.S. was homeless and had no telephone so could not be reached to complete the form. AR 223. Counsel wrote that R.S. "suffers of schizophrenia, bipolar disorder, depression, insomnia, ADHD, low blood pressure, difficulty breathing and PTSD." AR 223. He left blank the sections asking about daily activities, abilities and medications. AR 224-231. Similarly, counsel explained in a prehearing brief that he had been unable to communicate with R.S. over the last several months and therefore had not updated R.S.'s medical records. AR 267.

5

At the August 6, 2019 hearing, however, counsel told the ALJ that he was unlikely to be able to obtain any additional treatment records as R.S. had been "cycling in and out of incarceration." AR 42. He also explained R.S.'s failure to appear at the scheduled consultative examinations by telling the ALJ that R.S. had had "difficulty in communications" "due to his schizophrenia and paranoid delusions." AR 42.

### B. Regulatory Framework For Determining Disability

#### 1. The Five-Step Framework

Disability insurance benefits are available under the Social Security Act (the "Act") when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). A claimant is only found disabled if their physical or mental impairments are of such severity that they are not only unable to do their previous work but also "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a sequential, five-part evaluation process to determine whether a claimant is disabled under the Act. *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Id.* "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

At step one, the ALJ considers whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).[5] If the claimant is engaged in such activity, the ALJ determines that the claimant is not disabled, and the evaluation process stops. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ continues to step two. *See id.*

At step two, the ALJ considers whether the claimant has "a severe medically determinable

---

[5] The Court cites the regulations applicable to disability insurance benefits applications because the parallel SSI regulations are virtually identical.

6

physical or mental impairment" or combination of such impairments that meets the regulations' twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, disability benefits are denied. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that one or more impairments are severe, the ALJ proceeds to the next step. *See id.*

At step three, the ALJ compares the medical severity of the claimant's impairments to a list of impairments that the Commissioner has determined are disabling ("Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If one or a combination of the claimant's impairments meets or equals the severity of a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the analysis continues. *See id.*

At step four, the ALJ must assess the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is "the most [a claimant] can still do despite [that claimant's] limitations . . . based on all the relevant evidence in [that claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The ALJ then determines whether, given the claimant's RFC, the claimant would be able to perform their past relevant work. 20 C.F.R. § 404.1520(a)(4). Past relevant work is "work that [a claimant] has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." 20 C.F.R. § 404.1560(b)(1). If the claimant is able to perform their past relevant work, then the ALJ finds that they are not disabled. If the claimant is unable to perform their past relevant work, then the ALJ proceeds to step five.

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [the claimant's] identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). If the Commissioner meets this burden, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(f). Conversely, the claimant is disabled and entitled to benefits if there are not a significant number of jobs available in the national economy that the claimant can perform. *Id.*

**2. Supplemental Regulations for Determining Mental Disability**

The Social Security Administration has supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. First, the Commissioner must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. *See* 20 C.F.R. § 404.1520a(d)(3).

Appendix 1 provides impairment-specific "Paragraph A" criteria for determining the presence of various listed mental impairments, but all listed mental impairments share certain "Paragraph B" severity criteria in common (and some have alternative "Paragraph C" severity criteria). *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00. Any medically determinable mental impairment—i.e., one that satisfies the Paragraph A criteria of one or more listed mental impairments—is sufficiently severe to render a claimant disabled if it also satisfies the general Paragraph B criteria, which requires that a claimant's mental disorder "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id*. at 12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1*,* 12.00(F)(2)(d). A claimant with an "extreme" limitation is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1*,* 12.00(F)(2)(e).

This evaluation process is to be used at the second and third steps of the sequential evaluation discussed above.  Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").  If the Commissioner determines that the claimant has one or more severe mental impairments that neither meet nor are equal to any listing, the Commissioner must assess the claimant's residual functional capacity.  20 C.F.R. § 404.1520a(d)(3).  This is a "mental RFC assessment [that is] used at steps 4 and 5 of the sequential process [and] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . . "  Social Security Ruling 96-8p, 1996 WL 374184, at *4.

### C. The ALJ's Decision

The ALJ found at step one of the five-step framework that R.S. had not engaged in substantial gainful activity since August 5, 2017, the date he filed his application for SSI benefits. AR 21.  At step two, the found that R.S. had two medically determinable impairments: unspecified schizophrenia spectrum disorder and polysubstance abuse.  *Id.*  However, citing Dr. Wagle's March 23, 2018 observation that R.S.'s audio hallucinations might be caused by his recent use of THC, alcohol and amphetamines, the ALJ concluded that R.S.'s schizophrenia diagnosis was "questionable at best." *Id*.

The ALJ went on to find that R.S. did not have a severe impairment or combination of impairments because he had no impairments or combination of impairments that significantly limited his ability to perform basic work activities.  AR 21-22. In reaching this conclusion, the ALJ pointed to the absence of any ongoing medical treatment for any physical condition, finding that R.S.'s alleged physical conditions were not medically determinable impairments. With respect to his alleged mental impairments, the ALJ concluded that R.S.'s "minimal and sporadic mental health treatment history" was inconsistent with severe impairment.  AR 22.  He also cited R.S.'s failure to attend the scheduled psychiatric examinations in support of his conclusion.  AR 24.

9

1  Finally, he cited opinions of state agency consultants A.H. Ghiladi, M.D., Julia Wood, Ph.D., and
2  Joshua Schwartz, Ph.D., who reviewed the record, as well as the testimony at the hearing of
3  medical expert Ann Monis, which he found to be persuasive and consistent with the medical
4  evidence. AR 24.

Because the ALJ found that R.S.'s schizophrenia diagnosis was a medically determinable impairment, he also conducted an assessment of the four broad areas of functioning required to evaluate mental disorders, that is, the Paragraph B criteria. AR 24. The ALJ found that R.S. had no limitations in any of the four areas. AR 24.

Because the ALJ found that R.S. had no severe impairment(s) he did not address the further steps of the disability inquiry to determine whether R.S. met a Listing or to evaluate whether his RFC would allow him to perform a job that exists in significant number in the national economy. Rather, he found that R.S. was not disabled at step two of the inquiry.

### D.   Plaintiff's Contentions

Plaintiff asserts in his summary judgment motion that the ALJ erred in the following respects:

- The ALJ did not consider the opinions of treatment providers such as Dr. White, who diagnosed R.S. with a brain disorder, and Dr. Singh, who observed paranoid ideation and audio hallucinations.
- The ALJ did not consider that R.S.'s lack of regular treatment and failure to attend scheduled consultative examinations is a result of his financial insecurity, mental condition and cultural barriers, violating the rule that if the claimant's frequency or extent of treatment is not comparable with the extent of the claimant's complaints that other possible reasons for the claimant's inability to seek treatment must be considered.
- The ALJ did not consider R.S.'s impairments in combination and did not discuss R.S.'s brain disorder and PTSD.
- The ALJ should have found that R.S. meets or equals the following listings: 11.18 Traumatic Brain Injury, 12.03 Schizophrenia, 12.04 Depressive Disorder, and

1           12.15 Trauma and Stressor Related Disorder.

2     - The ALJ's RFC was not supported by substantial evidence. Further, testimony by a vocational expert at the hearing that there would be no jobs available to a person who is off task 15% of the time indicates that R.S. should have been found disabled.

Plaintiff contends the decision of the Commissioner should be reversed and the case remanded for award of benefits. Alternatively, he asks that the case be remanded for further proceedings.

### III.    ANALYSIS

#### A.    Standard of Review

District courts have jurisdiction to review the final decisions of the Commissioner and may affirm, modify, or reverse the Commissioner's decisions with or without remanding for further hearings. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3). When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are free of legal error and supported by "substantial evidence." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion" and that is based on the entire record. *Richardson v. Perales*, 402 U.S. 389, 401. (1971). "'Substantial evidence' means more than a mere scintilla," *id*., but "less than preponderance." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal citation omitted). Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1978)). In reviewing the record, the Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

#### B.    Discussion

As discussed above, the ALJ found R.S. was not disabled at step two of the five-step framework, finding that R.S.'s only medically determinable impairments were unspecified

11

schizophrenia spectrum disorder and polysubstance abuse schizophrenic and that neither impairment was severe. Although Plaintiff contends the ALJ erred in numerous respects in making these determinations, the Court concludes that the ALJ's decision is based on substantial evidence and that any errors were harmless, as discussed below.[6]

### 1. The ALJ's Evaluation of R.S.'s medically determinable impairments

Under the Social Security Act, disability can be established only on the basis of "medically determinable physical or mental impairment[s]." 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. § 423(d)(3) (providing that "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques"). A physical or mental impairment can be established only on the basis of "objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. A claimant's "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient "to establish the existence of an impairment(s)." *Id.*

Here, the ALJ considered both physical and mental impairments to determine the extent to which this threshold requirement was met. With respect to R.S.'s alleged physical impairments, the medical records reflect that R.S. was treated for gunshot wounds and for a head injury in connection with an accident involving a dirt bike, as discussed above. None of these medical records document any medical impairment related to these injuries, however. Even the facial fractures and pneumocephalus treated by Dr. White were found not to require surgery and were treated only with Tylenol, and the "brain disorder" diagnosis appears only to have referred to the pneumocephalus. There is no evidence in the record to support Plaintiff's assertion that this was a "diagnosis upon surgery" that reflected severe brain trauma. *See* Plaintiff's Summary Judgment Motion at 11. Therefore, the Court concludes that the ALJ did not err in failing to find any medically determinable physical impairments.

The ALJ also addressed R.S.'s mental impairments. With respect to Plaintiff's claims related to bipolar disorder and ADHD, the ALJ properly found that these were not medically

---

[6] Because the Court affirms the ALJ's finding that R.S. was not disabled at step two, it does not reach the challenges aimed at the later steps of the disability inquiry.

determinable impairments because the only evidence in the record as to these diagnoses were R.S.'s own reports to treatment providers that he had previously been diagnosed with these conditions. As there are no medical records from an acceptable medical source documenting those diagnoses the ALJ did not err in failing to consider them. Similarly, although Plaintiff claims that the ALJ should have considered his PTSD, there is no evidence in the record (from a medical source or otherwise) that R.S. was ever diagnosed with PTSD. Indeed, the only reference to PTSD in the record appears to be a note that R.S. denied having PTSD. *See* AR 603.

On the other hand, the ALJ erred in failing to consider R.S.'s depression and insomnia as medically determinable impairments. As discussed above, R.S. was observed by his treatment providers to be depressed. He also complained repeatedly of insomnia to his treatment providers and Dr. Wagle prescribed buspar to treat his insomnia. Therefore, there is objective medical evidence to support depression and insomnia as impairments and the ALJ erred in failing to find that these were medically determinable impairments at step two. The Court concludes that this error is harmless, however, because there is no evidence in the record that R.S.'s depression or insomnia had any significant impact on his ability to perform work-related functions, as discussed further below. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

### 2. The ALJ's evaluation of the severity of R.S.'s impairments

At step two, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. Step two is a "de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). Thus, "an impairment or combination of impairments may be found not severe only if evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* "An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85–28). In determining whether this step is met, the ALJ considers the claimant's statements and "any description [their] medical sources or

13

nonmedical sources may provide about how the symptoms affect [their] activities of daily living and [their] ability to work." 20 C.F.R. § 416.929(a).

### a.  The ALJ's evaluation of R.S.'s claim of disability

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  That standard is met here.

The ALJ found that R.S.'s claim that his schizophrenia and other alleged impairments prevent him from working was not consistent with the medical record, which did not support the intensity, persistence and limiting effects of R.S.'s symptoms that he claimed.  In particular, he reviewed the jail records of R.S.'s mental health treatment, which he noted covered only eight months over a period of several years and were the *only* mental health treatment records for the relevant period, and found that R.S.'s mental impairments were not severe because those records showed medical noncompliance, refusals of community mental health services, and denial of mental health problems, as well as mental status examinations that were normal apart from reports of audio hallucinations. AR 23.

The Court finds the ALJ's finding to be supported by substantial evidence and sufficiently specific to establish that his rejection of R.S.'s claims as to severity was not arbitrary.  Plaintiff argues that the ALJ erred in relying on his failure to seek treatment because the ALJ was required under SSR 16-3p to consider the reasons for non-compliance or failure to seek treatment, pointing also to the Ninth Circuit's observation in the context of mental health impairments that it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Plaintiff's Summary Judgment Motion at 12 (quoting *Nguyen v. Chater*, 100 F.3d. 1462, 1465 (9th Cir. 1996)).  While Plaintiff correctly states the standards, however, he

14

has pointed to no evidence in the record "that his failure to seek treatment was attributable to his mental impairment rather than personal preference." *Chapple v. Berryhill*, No. 15-CV-06048-KAW, 2017 WL 3721584, at *12 (N.D. Cal. Aug. 29, 2017) (holding that ALJ did not err in finding that claimant's claims about the severity of his mental impairment were not entirely credible based on failure to seek treatment where there was no evidence that failure was due to mental impairment).

The ALJ also cited R.S.'s failure to attend the scheduled consultative examinations as a separate reason for rejecting R.S.'s claims, citing 20 C.F.R. § 416.918. That section provides, in relevant part, "[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R. § 416.918. This too is a sufficient reason to find Plaintiff's claims as to the severity of his symptoms to be not entirely credible. "[C]ourts in this district have found that an 'unexcused failure to attend a consultative evaluation would justify an ALJ's decision to discredit that claimant's testimony.' " *Chapple*, 2017 WL 3721584, at *13 (citing *Zamora v. Astrue*, No. C 09-4852 JSW, 2010 WL 3768001, at *7 (N.D. Cal. Sept. 22, 2010), affirmed by *Zamora v. Comm'r of Soc. Sec. Admin.*, 471 Fed. Appx. 579 (9th Cir. 2012)). Although Plaintiff's counsel suggested at the hearing that R.S.'s failure to attend the consultative examinations was related to his schizophrenia and "paranoid delusions" he did not offer any specific facts showing there was good cause for R.S.'s failure to attend them and the record contains no specific evidence as to why R.S. failed to attend any of the scheduled consultative examinations.

Therefore, the Court concludes the ALJ did not err in his evaluation of R.S.'s claim that his mental impairments are severe.

### b. The ALJ's evaluation of medical opinions

The Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in March 2017 and apply to claims, like R.S.'s claim, filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations provide that the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling

weight to any medical opinion." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020). Instead the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors." *Id.* (quoting 20 C.F.R. § 416.920c(a)–(c)). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that "form the foundation of the current treating source rule." *Id.* (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).

Plaintiff contends the ALJ erred by finding persuasive the opinions of state agency medical consultants A.H. Ghiladi, M.D. Julia Wood, Ph.D., Joshua Schwartz, Ph.D., and medical expert Ann Monis without considering the persuasiveness of R.S.'s treatment providers, including Hern G. White M.D., Ho Hyun, M.D., J. Herce N.P. and Khenu G. Singh, M.D. The Court rejects these arguments for two reasons. First, a "medical opinion" "is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in his ability to perform physical or mental work activities. 20 C.F.R. § 416.913(a)(2). Plaintiff's treatment providers did not address R.S.'s limitations and restrictions and therefore there were no medical opinions from those providers that ALJ was required to evaluate for persuasiveness. *See Champagne v. Colvin*, 582 F. App'x 696, 697 (9th Cir. 2014) (rejecting plaintiff's argument that the ALJ erred by "disregard[ing] his treaters' opinions about his limitations . . . because none of the treating providers gave an opinion regarding his functional limitations.").

Second, the ALJ did not err in finding the opinions of the medical consultants and medical expert persuasive. Plaintiff points out that some of the medical consultants and the medical expert stated that the medical evidence was insufficient to evaluate the claim, arguing that they did not actually offer any medical opinions. However, it was reasonable for the ALJ to treat these findings as opinions that there was insufficient evidence to establish any functional limitations that would give rise to a severe impairment. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("When the evidence can rationally be interpreted in more than one way, the court must

uphold the Commissioner's decision"). Further, the ALJ found that these opinions were both consistent with the medical record and supported by the absence of any complete psychiatric examination. AR 24. Thus, he addressed the most important factors for determining persuasiveness, in accordance with the regulations governing the evaluation of medical opinions. Therefore, the Court rejects Plaintiff's assertion that the ALJ erred in relying on the opinions of the agency consultants and medical expert in support of his finding that R.S. did not have a severe impairment or combination of impairments.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS to Commissioner's Summary Judgment Motion and DENIES Plaintiff's Summary Judgment Motion. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Dated: March 25, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge